IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF INDIANA
Indianapolis Division

| | | |
|---|---|---|
| CHILD EVANGELISM FELLOWSHIP OF INDIANA, INC. | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:17-cv-1495 |
| INDIANA METROPOLITAN SCHOOL DISTRICT OF PIKE TOWNSHIP, DR. FLORA REICHANADTER, in her official capacity as Superintendent of Indiana Metropolitan School District of Pike Township, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**VERIFIED COMPLAINT FOR DECLARATORY, PRELIMINARY,
AND PERMANENT INJUNCTIVE RELIEF AND DAMAGES**

For its VERIFIED COMPLAINT against Defendants INDIANA METROPOLITAN SCHOOL DISTRICT OF PIKE TOWNSHIP ("District") and DR. FLORA REICHANADTER ("Reichanadter") ("collectively "Defendants"), Plaintiff CHILD EVANGELISM FELLOWSHIP OF INDIANA, INC. ("CEF"), by and through its undersigned counsel, alleges and avers as follows:

**INTRODUCTION**

1.      For nearly two entire school years, CEF has sought to host its Good News Club for students in the District. Despite numerous applications, persistent communications, and tireless efforts at gaining access on an equal basis with other similarly situated groups, CEF has met resistance at every turn. The District has ignored CEF's demonstration that unequal access to District facilities is a violation of entrenched law, demonstrated hostility to the program CEF wishes to provide to students in the District, and charged CEF fees for the use of District facilities

while similar groups have their fees waived. Because of the District's unconstitutional and unconscionable actions, students in the District have been deprived of a character building and beneficial program for the entire 2016-2017 school year. Based on the unconstitutional application of discriminatory fees and the unconstitutional denial of access to the District's advertising and literature distribution forum, CEF has been stripped of its First Amendment rights and silenced in its efforts to provide its beneficial and free educational program of interest to countless students in the District. The District's actions and intentional inactions have therefore caused irreparable injury to CEF's cherished constitutional rights.

2.    In this action, CEF seeks injunctive relief against the District, Reichanadter, and their agents, servants, departments, divisions, employees and those acting in concert and with actual notice, enjoining them from enforcing Policy 7510, Use of School Facilities ("Policy 7510") and Policy 9700, Relations with Special Interest Groups ("Policy 9700"), and from acting in such a manner as to violate CEF's rights under the Free Speech Clause, Establishment Clause, and Free Exercise Clause of the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

3.    CEF also prays for declaratory judgment to declare Policy 7510 and Policy 9700, both facially and as-applied, unconstitutional and unlawful. CEF also seeks an award of damages.

4.    An actual controversy exists between the parties involving substantial constitutional issues, in that the District's policies, both facially and as applied, violate the Free Speech Clause, the Establishment Clause, the Free Exercise Clause and the Equal Protection Clause of the First and Fourteenth Amendments to the United States Constitution.

## PARTIES

5.     CEF is a non-profit organization incorporated under the laws of Indiana with its principal place of business in Westfield, Indiana, located at 17005 Westfield Park Road, Westfield, Indiana 46074.

6.     The District is the governing body for public schools in Pike Township, Indiana, with its principal place of business in Indianapolis, Indiana, located at 6901 Zionsville Road, Indianapolis, Indiana 46268.

7.     Dr. Flora Reichanadter is the Superintendent of the Indiana Metropolitan School District of Pike Township and is sued in her official capacity.

8.     Each and all of the acts alleged herein were done by Defendants' application of the statutes, ordinances, regulations, customs, policies, procedures, and laws of the State of Indiana and the Metropolitan School District of Pike Township.

## JURISDICTION AND VENUE

9.     This action arises under the First and Fourteenth Amendments to the United States Constitution, and is brought pursuant to 42 U.S.C. § 1983.

10.     This Court has jurisdiction over this action pursuant to, and by virtue of, 28 U.S.C. §§ 1331.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b), because Defendants reside in this judicial district and/or a substantial part of the events or omissions giving rise to CEF's claims occurred in this district.

12.     This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Rule 57 of the Federal Rules of Civil Procedure, and is authorized to grant injunctive relief pursuant to Rule 65 of the Federal Rules of

Civil Procedure.

13.     This Court is authorized to grant CEF's prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

## GENERAL ALLEGATIONS

### A.     CEF'S GOOD NEWS CLUBS

14.     The Good News Club is an after-school enrichment program for children, sponsored internationally by Child Evangelism Fellowship, Incorporated, and in schools throughout Indiana by CEF.

15.     CEF is a subsidiary of Child Evangelism Fellowship Incorporated, a Missouri non-profit organization with its principal place of business in Missouri. Child Evangelism Fellowship Incorporated has been in existence for over seventy years and is currently active in every state in the union, and many countries around the world.

16.     CEF has used in the past, and wants to continue to use, the District facilities to conduct after-school Good News Club meetings.

17.     The Good News Club encourages learning, spiritual growth, moral development, and service to others by providing religious and moral education through lessons from the Bible, encouraging memorization of Bible verses, singing hymns, and reading stories.

18.     Good News Club meetings are open to all children who attend school within the District between the ages of five and twelve, who obtain the prior written permission of their parents, regardless of religious background or lack of religious belief.

19.     Children are not charged a fee for attending Good News Club meetings, nor do the children engage in commercial or fundraising activities.

20.     Children who attend Good News Clubs after the conclusion of their school day are

taught Biblical principles, moral values, character qualities, respect for authority, relationships, morals, character development, and issues of importance to their school and community. Children are also encouraged to participate in community service.

21.    Good News Clubs are nondenominational and open to all students.

22.    Since Good News Clubs are designed for elementary-aged children, the meetings are most often conducted on public elementary school campuses, immediately after school.

23.    Elementary school campuses are the best locations for Good News Club meetings because (a) it is very difficult and many times impossible for parents to provide transportation for their children from school to an off-campus location, and then from that location home; (b) Good News Clubs cannot provide transportation to an off-campus location for participating children without undue burden and expense; and (c) many parents have safety concerns and do not want their young children to be transported in vehicles by others.

24.    Conducting meetings on the public school campus immediately after the end of classes allows parents to pick their children up at a convenient location. It also eliminates the safety concerns attendant to transporting young children away from school or requiring them to walk to an off-campus location.

25.    The public school campus therefore provides a safe and familiar place for after-school activities, and there are no other suitable or available options for safe and familiar surroundings where school students can meet.

26.    CEF does not have the resources or funds to pay facility use fees for the Good News Clubs to meet. It must seek donors to cover operating costs, including resources and training for Good News Club workers, refreshments, and books.

27.    Good News Clubs meet once a week, immediately after school, and trained

volunteer teachers provide instructions and activities which incorporate Biblical principles, moral values, character qualities, respect for authority, and service to the school and community.

28.     CEF's mission shares many common tenets with other nonprofits groups such as the Boy Scouts of America.

### B.      POLICY 7510 – USE OF SCHOOL FACILITIES

29.     On April 11, 2013, the District adopted the current version of Policy 7510, USE OF SCHOOL FACILITIES, which governs the use of District facilities by community organizations unrelated to the District. A true and correct copy of Policy 7510 is attached hereto as Exhibit A and incorporated herein.

30.     Policy 7510 states that the District believes that school facilities "should be made available for community purposes" when an organization's program is "harmonious with the purposes" of the District.

31.     Policy 7510 makes District facilities available for, *inter alia*, "[c]ommunity organizations or groups of individuals formed for charitable, civic, social, educational, political, religious and recreational purposes."

32.     Policy 7510 requires community organizations to request use of District facilities in writing and places decision-making authority for such written applications in the hands of the school principals and the Director of Facilities.

33.     Policy 7510 does not list any considerations, restrictions, or limitations on any District official in making a determination concerning use of District facilities.

34.     Policy 7510 states that the "Superintendent shall develop administrative guidelines for the granting of permission to use [District] facilities, **including a schedule of fees**." (emphasis added).

6

35.     Policy 7510 does not list any considerations, restrictions, or limitations on the Superintendent in making a determination concerning schedule of fees for use of District facilities.

36.     In accordance with Policy 7510, the Superintendent developed Administrative Guidelines governing the use of District facilities. A true and correct copy of the Superintendent's Administrative Guidelines concerning Policy 7510 is attached hereto as Exhibit B and incorporated herein.

37.     The Administrative Guidelines state that "[s]chool authorities have the right to refuse the use of the building/facilities to **any** groups or individual." (emphasis added).

38.     The Administrative Guidelines also state that the District "reserves the option to waive rental fees."

39.     Neither Policy 7510 nor the Administrative Guidelines list any considerations, restrictions, or limitations on the District in making a determination concerning the waiver of fees for use of District facilities.

**C.      THE DISTRICT'S DISCRIMINATORY APPLICATION OF POLICY 7510.**

40.     In the fall semester of 2014, CEF applied to use District facilities to host its Good News Club at New Augusta Public Academy South. A true and correct copy of CEF's application is attached hereto as Exhibit C and incorporated herein.

41.     CEF received approval for the use of District facilities for its Good News Clubs, and it hosted the club during that semester.

42.     In order for CEF to receive approval for its use of District facilities, the District required CEF to pay a facilities use fee of $45.00 per session.

43.     CEF hosted six sessions of its Good News Club in the Spring 2015 semester and paid a total of $270.00 in facilities use fees. (*See* Exhibit C).

7

44.    During the Spring 2015 semester, CEF learned that other similarly situated community organizations were permitted to use District facilities at no cost. These other organizations included the Girl Scouts, Girls on the Run, NU Corinthian Youth Basketball League, Pike Soccer Club, and others.

45.    On August 6, 2015, upon learning of this disparate treatment, counsel for CEF sent a letter to the District requesting access on an equal basis with the other community organizations providing programs similarly situated to CEF. A true and correct copy of that letter is attached hereto as Exhibit D and incorporated herein.

46.    On August 31, 2015, the District responded to CEF's letter stating that all organizations applying to use District facilities must pay the facilities use fee contemplated by Policy 7510. A true and correct copy of the District's response is attached hereto as Exhibit E and incorporated herein.

47.    In its August 31 response, the District indicated that CEF was not being charged facilities use fees in any impermissible or unconstitutional manner because those groups that were receiving waiver of their fees were "joining" with the District to provide their programs for students in the District. (*See* Exhibit E).

48.    In its response, the District claims that it has created an "entirely reasonable" distinction between groups such as CEF and those such as the Girl Scouts. (*Id.*). That distinction, the District claims, is based upon its selective "partnership" with non-religious organizations providing programs of interest to students in the District.

49.    On September 23, 2015, counsel for CEF communicated with the District again concerning the unequal treatment of CEF with regard to facilities use fees, and reiterated that the First Amendment mandates equal treatment between CEF and other similarly situated community

8

organizations. A true and correct copy of the CEF's communication is attached hereto as Exhibit F and incorporated herein.

50. Counsel for CEF informed the District that clever labels and lawyer-drafted distinctions have been tried many times before to impose unequal burdens on CEF, and that every court to consider them has rejected such distinctions when they result in unequal access to religious organizations when compared to that of similarly situated secular organizations such as the Scouts. (Exhibit F at 5-7).

51. On October 8, 2015, the District acknowledged CEF's response but provided no substantive response. (*Id.* at 5).

52. On October 26, 2015, counsel for CEF sent an additional correspondence to the District requesting a response concerning CEF's continued attempts to gain equal access to District facilities. (*Id.* at 4). CEF requested that the District provide confirmation of equal treatment by November 2, 2015.

53. On October 29, 2015, the District responded by noting that it was attempting to reach a final determination concerning CEF's request for equal access, but did not provide any substantive response concerning the District's position. (*Id.* at 4).

54. On November 2, 2015, the District responded to CEF, stating that it would stand by its previous position regarding CEF's facilities use fees despite waiving such fees for other similarly situated groups. (*Id.* at 3). The District stated that it would not waive CEF's fees.

55. On January 20, 2016, counsel for CEF again responded to the District stating that the District's position regarding the application of facilities use fees to CEF was unsupportable under clear law and that CEF would be forced to pursue other remedies should the District maintain its unconstitutional position. (*Id.* at 2-3).

56.    CEF received no response to its January 20th communication.

57.    On February 8, 2016, counsel for CEF requested that the District provide an update concerning its position relating to CEF. (*Id.* at 1).

58.    That same day, the District responded by confirming that it stood by its position that it could "partner" with certain organizations similar to CEF and waive such fees for those groups, but was not required to provide a similar waiver to CEF. (*Id.*).

**D.    THE DISTRICT'S DISCRIMINATORY APPLICATION OF POLICY 7510 IRREPARABLY HARMS CEF.**

59.    CEF has been irreparably harmed by the District's unconstitutional application of Policy 7510 and the Administrative Guidance promulgated thereunder.

60.    By forcing CEF to pay a discriminatory fee, CEF incurs substantial financial hardship and a diminution in the financial resources donated from its supporters.

61.    As a result of the District's discriminatory fee, CEF has been unable to host its Good News Clubs in the District since the beginning of the 2016-2017 school year and will continue to be unable to host its Good News Clubs until the discriminatory fee and application of Policy 7510 is enjoined.

62.    By imposing a discriminatory fee, the District denies CEF the ability to communicate with students in the District on the same basis as other similarly situated organizations, such as the Scouts.

63.    The discriminatory fee imposed by the District would force CEF to divert funds away from its programs, while other similarly situated organizations, such as the Scouts, have no such burden.

64.    The District's denial of equal access therefore serves as a serious impediment to the operation of the Good News Club and precludes CEF from exercising its First Amendment rights.

**E.     POLICY 9700 – RELATIONS WITH SPECIAL INTEREST GROUPS**

65.     On March 8, 2012, the District adopted the current version of Policy 9700, RELATIONS WITH SPECIAL INTEREST GROUPS, which governs distribution of advertising materials within the District. A true and correct copy of Policy 9700 is attached hereto as Exhibit G and incorporated herein.

66.     Policy 9700 permits community organizations to provide advertising and promotional materials to students in the District, if such materials are approved by the District.

67.     Policy 9700 states that any community organization may use the advertising forum to provide materials to students in the District if it complies with the policy.

68.     Policy 9700 requires community organizations wishing to provide materials to students in the District to submit the proposed materials to the District for approval.

69.     Policy 9700 requires the District to review the submitted materials with seven school days, but it provides no time frame in which the District must provide a response.

70.     Policy 9700 states that material will not be approved if the District determines that it "establishes the supremacy of a particular religious denomination, sect or point of view."

71.     Policy 9700 provides limited criteria for the official tasked with approving the submitted materials, but states only that the District "shall not engage in viewpoint discrimination, and may not promote, establish or advocate a particular religious denomination, sect or point of view."

72.     All groups wishing to provide materials to students in the District must include a disclaimer indicating that the District does not endorse, sponsor, or approve of any content in the materials distributed.

**F.      THE DISTRICT'S DISCRIMINATORY APPLICATION OF POLICY 9700.**

73.      In conjunction with CEF's request to use, and actual use of, District facilities in Spring 2015, CEF sought permission to provide materials to students in the District through the District's advertising and literature distribution forum.

74.      The District denied CEF's request for such access.

75.      In its August 8, 2015 communication with the District, counsel for CEF requested that the District provide equal access to CEF concerning any advertising and literature distribution fora. (*See* Exhibit D).

76.      In its August 8 communication, counsel for CEF noted that numerous other organizations were being permitted to access the advertising and literature distribution forum, including the Girl Scouts and various community sports programs. (*Id.* at 2).

77.      Because other similarly situated groups were being permitted access to the advertising and literature distribution forum, counsel for CEF informed the District that unequal access to the forum and discriminatory application of Policy 9700 would be unconstitutional. It therefore requested immediate access to such fora.

78.      On August 31, 2015, the District responded to CEF's request by indicating that it was not required to grant CEF access to its advertising and literature distribution forum, that the District was not impermissibly discriminating against CEF, and that the District was required to exclude CEF from its advertising and literature distribution forum because of the Establishment Clause. (*See* Exhibit E at 2).

79.      The District cited Policy 8800, RELIGIOUS/PATRIOTIC CEREMONIES AND OBSERVANCES ("Policy 8800"), as grounds for its position. A true and correct copy of Policy 8800 is attached hereto as Exhibit H and incorporated herein.

80.     The District claimed, in accordance with Policy 8800, that allowing any religious organization to place materials in the advertising and literature distribution forum would "endorse that religious group's message." (Exhibit E at 2).

81.     Policy 8800, however, provides that distribution of any materials must be in accordance with Policy 9700, which permits the distribution of materials by **any** community organization that complies with the requirements of Policy 9700.

82.     On September 23, 2015, counsel for CEF responded to the District by noting that numerous federal courts, including the Supreme Court, have rejected the exact position espoused by the District that the Establishment Clause prohibits equal treatment of religious organizations in otherwise available expressive fora. (Exhibit F at 5-6).

83.     On November 2, 2015, after several communications between counsel for CEF and the District, the District offered to permit CEF to post "informational materials that are non-proselytizing in nature" on the bulletin board in New Augusta Public Academy South (*Id.* at 3).

84.     On January 20, 2016, counsel for CEF responded noting that CEF appreciated the opportunity to use the bulletin board, but advised that CEF was seeking equal access to all of the District's advertising and literature distribution fora, including the website advertising forum, which the District makes available to the Girl Scouts and other similar community organizations. (*Id.* at 2).

85.     CEF received no response to its January 20 communication.

86.     On February 8, 2016, counsel for CEF sent a follow-up communication to the District requesting that the District respond to CEF's previous requests. (*Id.* at 1).

87.    That same day, the District responded to CEF by noting that, despite permitting various organizations to advertise on its website, it did not maintain a limited public forum on the website and that it was not required to provide equal access to CEF on its electronic forum. (*Id.*).

88.    In that communication, as it did with Policy 7510, the District maintained that it was permitted to establish "partnerships" with any community organization it desired, such as the Scouts, and that such a distinction was entirely permissible. (*Id.*).

## G.    THE DISTRICT'S DISCRIMINATORY APPLICATION OF POLICY 9700 IRREPARABLY HARMS CEF.

89.    CEF has been irreparably harmed by the District's denial of equal access to the District's advertising and literature distribution forum.

90.    CEF has no other suitable alternative means to distribute advertisements and parental permission forms for its Good News Clubs or to convey its message to students in the District and is therefore chilled in its expression of otherwise permissible messages to students in the District.

91.    As a result of the District's discriminatory denial of equal access, CEF has been unable to advertise its Good News Clubs for the 2015-2016 and 2016-2017 school years and will continue to be unable to host these clubs until Policy 9700 is enjoined, both facially and as-applied.

92.    By denying CEF equal access to the District's advertising and literature distribution forum, the District denies CEF the ability to communicate with students in the District on the same basis as other similarly situated organizations, such as the Scouts.

93.    The District's denial of equal access to the District's advertising and literature distribution forum therefore serves as a serious impediment to the operation of the Good News Club and precludes CEF from exercising its First Amendment rights.

**COUNT I – VIOLATION OF THE FREEDOM OF SPEECH CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION**

94.    CEF hereby reiterates and adopts each and every allegation in paragraphs 1-93.

95.    The Free Speech Clause of the First Amendment to the United States Constitution, incorporated and made applicable to the states by the Fourteenth Amendment, prohibits the District from abridging CEF's freedom of speech.

96.    Policy 7510 and Policy 9700, both on their face and as-applied, constitute an unconstitutional abridgement of CEF's freedom of speech.

97.    Policy 7510 and Policy 9700 constitute an unconstitutional prior restraint on CEF's protected speech.

98.    Policy 7510 and Policy 9700, both on their face and as-applied, are unconstitutionally vague.

99.    Policy 7510 and Policy 9700, both on their face and as-applied, are unconstitutionally overbroad.

100.    Policy 7510 and Policy 9700, both on their face and as-applied, unconstitutionally vest unbridled discretion in the hands of District officials.

101.    Policy 7510 and Policy 9700, both on their face and as-applied, permit District officials to have unfettered discretion concerning which groups will be permitted access to District facilities, which groups will have their facility fees waived, and which groups will be permitted access to the District's advertising and literature distribution forum.

102.    Policy 7510 and Policy 9700, both on their face and as-applied, discriminate against religious groups, religious speech, and religious viewpoints.

103.    Policy 7510 and Policy 9700, both on their face and as-applied, impose unconstitutional content and viewpoint-based restrictions on CEF's speech.

104. There is no compelling government interest sufficient to justify the differential treatment and unequal burden Policy 7510 and Policy 9700 place on CEF, both facially and as-applied by the District.

105. Policy 7510 and Policy 9700, both on their face and as-applied, are not the least restrictive means to accomplish any permissible objective sought to be served.

106. Policy 7510 and Policy 9700, both on their face and as-applied, are not narrowly tailored restrictions on CEF's speech.

107. Policy 7510 and Policy 9700, both on their face and as-applied, do not serve a significant government interest.

108. Policy 7510 and Policy 9700, both on their face and as-applied, fail to leave open sufficient alternative channels of communication.

109. Policy 7510 and Policy 9700, both on their face and as-applied, are unreasonable and impose irrational and unjustifiable restrictions on CEF's constitutionally protected speech.

110. Policy 7510 and Policy 9700, both on their face and as-applied, are not rationally related to any legitimate government interest.

111. Policy 7510 and Policy 9700, both on their face and as-applied, unconstitutionally chill and abridge CEF's right to engage in free speech guaranteed by the First Amendment.

112. CEF has no adequate remedy at law to correct the continuing deprivation of its most cherished constitutional liberties.

113. As a direct and proximate result of the District's continuing violations of CEF's rights, CEF has suffered, is suffering, and will continue to suffer immediate and irreparable harm, including but not limited to, the loss of its ability to exercise its constitutional rights.

WHEREFORE, CEF respectfully prays for relief against the District as hereinafter set forth in its prayer for relief.

## COUNT II – VIOLATION OF THE ESTABLISHMENT CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION

114. CEF hereby reiterates and adopts each and every allegation in paragraphs 1-93.

115. The Establishment Clause of the First Amendment, incorporated and made applicable to the states by the Fourteenth Amendment, prohibits government from establishing a religion.

116. The Establishment Clause also prohibits excessive government entanglement with religion.

117. The Establishment Clause also prohibits the government from showing hostility toward religion and prohibits showing favoritism towards one religious sect over another or towards non-religion over religion.

118. The District is required to grant CEF the same access to District facilities and to its advertising and literature distribution forum as other similarly situated clubs, and may do so without any constitutional concerns.

119. Policy 7510 and Policy 9700, both on their face and as-applied, permit the District to deny equal access to District facilities and its advertising and literature distribution forum to religious groups and clubs, including CEF.

120. Policy 7510 and Policy 9700, both on their face and as-applied, violate the Establishment Clause because they demonstrate hostility toward those seeking to use District facilities to express religious viewpoints, including CEF.

121. Policy 7510 and Policy 9700, both on their face and as-applied, violate the Establishment Clause because they excessively entangle the District with religion.

17

122.    CEF has no adequate remedy at law to correct the continuing deprivation of its most cherished constitutional liberties.

123.    As a direct and proximate result of the District's continuing violation of CEF's rights, CEF has suffered, is suffering, and will continue to suffer immediate and irreparable harm, including but not limited to, the loss of the ability to exercise its constitutional rights.

WHEREFORE, CEF respectfully prays for relief against the District as hereinafter set forth in its prayer for relief.

**COUNT III – VIOLATION OF THE RIGHT TO FREE EXERCISE OF RELIGION UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION**

124.    CEF hereby reiterates and adopts each and every allegation in paragraphs 1-93.

125.    Policy 7510 and Policy 9700, both on their face and as-applied, violate CEF's right to the free exercise of religion, as guaranteed by the First Amendment to the United States Constitution.

126.    CEF has a sincerely held religious belief that it should teach the Bible and provide moral guidance and character training with a religious viewpoint to children.

127.    CEF exercises this religious belief through sponsoring Good News Club meetings in public school facilities during after school hours.

128.    Policy 7510 and Policy 9700, both on their face and as-applied, substantially burden CEF's sincerely held religious beliefs by failing to grant CEF equal access to District facilities and to the District's advertising and literature distribution forum on an equal basis with similar non-religious clubs and organizations providing similar services to students in the District.

129.    Policy 7510 and Policy 9700, both on their face and as-applied, are neither neutral nor generally applicable, and specifically target religion and religious organizations in a discriminatory manner.

130.    There is no compelling government interest sufficient to justify Policy 7510 and Policy 9700, either on their face and as-applied.

131.    Policy 7510 and Policy 9700, both on their face and as-applied, are not the least restrictive means to accomplish any governmental purpose sought to be served.

132.    Policy 7510 and Policy 9700, both on their face and as-applied, are not narrowly tailored restrictions on CEF's free exercise of religion.

133.    The District has failed and refused to accommodate CEF's sincerely held religious beliefs.

134.    The District has specifically targeted religion for disparate treatment and has set up a system of individualized exemptions that permit certain non-religious groups to use District facilities and the District's advertising and literature distribution forum, while denying religious groups access to such fora.

135.    CEF has no adequate remedy at law to correct the continuing deprivation of its most cherished constitutional liberties.

136.    As a direct and proximate result of the District's continuing violation of CEF's rights, CEF has suffered, is suffering, and will continue to suffer immediate and irreparable harm, including but not limited to, the loss of the ability to exercise its constitutional rights.

WHEREFORE, CEF respectfully prays for relief against the District as hereinafter set forth in its prayer for relief.

## COUNT IV – VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION

137.    CEF hereby reiterates and adopts each and every allegation in paragraphs 1-93.

138.    CEF's right to equal protection under the law is guaranteed by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

139.    Policy 7510 and Policy 9700, both on their face and as-applied, are an unconstitutional abridgment of CEF's right to equal protection under the law, are not facially neutral, and specifically target religion for unequal treatment.

140.    Policy 7510 and Policy 9700, both on their face and as-applied, are an unconstitutional abridgment of CEF's right to equal protection of the law because they permit the District to treat CEF differently from other similarly situated groups on the basis of the content and viewpoint of CEF's message.

141.    Policy 7510 and Policy 9700, both on their face and as-applied, discriminate between religious and non-religious groups.

142.    Policy 7510 and Policy 9700, both on their face and as-applied, are not supported by a compelling government interest sufficient to justify their enactment, implementation, and application.

143.    Policy 7510 and Policy 9700, both on their face and as-applied, are not the least restrictive means to accomplish any permissible governmental purpose sought to be served.

144.    Policy 7510 and Policy 9700, both on their face and as-applied, do not have a rational basis.

145.    Policy 7510 and Policy 9700, both on their face and as-applied, are irrational and unreasonable, and impose irrational and unjustifiable restrictions on CEF.

146.    CEF has no adequate remedy at law to correct the continuing deprivation of its most cherished constitutional liberties.

147.    As a direct and proximate result of the District's continuing violation of CEF's rights, CEF has suffered, is suffering, and will continue to suffer immediate and irreparable harm, including but not limited to, the loss of the ability to exercise its constitutional rights.

WHEREFORE, CEF respectfully prays for relief against the District as hereinafter set forth in its prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, CEF prays for judgment as follows:

A.      That this Court issue a Preliminary Injunction, enjoining Defendants, Defendants' officers, agents, servants, employees, and all other persons who are in active concert or active participation with them, from enforcing Policy 7510 and Policy 9700 against CEF so that:

1.      Defendants must permit CEF to meet in District facilities on an equal basis and terms with similarly situated non-religious groups;

2.      Defendants must permit CEF access to the advertising and literature distribution forum on an equal basis and terms with similarly situated non-religious groups; and

3.      Defendants will not use their policies in any manner whatsoever to infringe on CEF's constitutional rights.

B.      That this Court issue a Permanent Injunction, enjoining Defendants, Defendants' officers, agents, servants, employees, and all other persons who are in active concert or active participation with them, from enforcing Policy 7510 and Policy 9700 against CEF so that:

1.      Defendants must permit CEF to meet in District facilities on an equal basis and terms with similarly situated non-religious groups;

2.      Defendants must permit CEF to access the advertising and literature distribution forum on an equal basis and terms with similarly situated non-religious groups; and

3.      Defendants will not use their policies in any manner whatsoever to infringe on CEF's constitutional rights.

C.      That this Court retain jurisdiction of this matter for the purpose of enforcing this

Court's orders.

    D.       That this Court award CEF $100.00 as and for nominal damages.

    E.       That this Court award CEF $270.00 as and for actual damages.

    F.       That this Court award CEF the reasonable costs and expenses of this action, including attorney's fees, in accordance with 42 U.S.C. § 1988.

    G.       That this Court grant such other and further relief as this Court deems equitable and just under the circumstances.

Respectfully submitted,

/s/ Daniel J. Schmid
Mathew D. Staver*
Horatio G. Mihet*
Roger K. Gannam*
Daniel J. Schmid*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Fax: (407) 875-0770
Email: dschmid@LC.org

*Attorneys for Plaintiff*

*Applications for Admission Pending

## VERIFICATION

I verify under penalty of perjury that the foregoing is true and correct.


Executed on _____May 5, 2017_____


_____

Sherie Phares
Director
Child Evangelism Fellowship of Indiana, Central Indiana Chapter