# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| CHILD EVANGELISM FELLOWSHIP OF INDIANA, INC., | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) Cause No. 1:17-cv-1495-WTL-MPB ) |
| INDIANA METROPOLITAN SCHOOL DISTRICT OF PIKE TOWNSHIP, et al., | ) ) ) |
| Defendants. | ) |

## ENTRY ON MOTION FOR PRELIMINARY INJUNCTION

This cause is before the Court on the Plaintiff's motion for preliminary injunction (Dkt. No. 5). The motion is fully briefed, and the Court has heard oral argument regarding the issues raised therein. The Court, being duly advised, **GRANTS IN PART** the motion for the reasons and to the extent set forth below.

## I. BACKGROUND

Plaintiff Child Evangelism Fellowship of Indiana, Inc. ("CEF") sponsors the Good News Club, an after-school enrichment program for elementary school children. As described in CEF's brief:

> The Good News Club encourages learning, spiritual growth, moral development, and service to others by providing religious and moral education through lessons from the Bible, encouraging memorization of Bible verses, singing hymns, and reading stories. Good News Club meetings are open to all children who attend school within the District between the ages of five and twelve, who obtain the prior written permission of their parents, regardless of religious background or lack of religious belief. Children are not charged a fee for attending Good News Club meetings, nor do the children engage in commercial or fundraising activities. Children who attend Good News Clubs after the conclusion of their school day are taught Biblical principles, moral values, character qualities, respect for authority, relationships, morals, character development, and issues of importance to their

school and community. Children are also encouraged to participate in community
service.  Good News Clubs are nondenominational and open to all students.

Dkt. No. 6 at 2-3.  CEF hosted the Good News Club at New Augusta Public Academy South, one of the elementary schools in Defendant Indiana Metropolitan School District of Pike Township ("the District"), during the spring semester of 2015.  It paid a facilities fee of $45 per session, for a total of $270, to use a classroom in the school for its after school meetings.  When it learned that other groups, such as the Boy Scouts and the Girl Scouts, were allowed to use the school's facilities for free, CEF asked the school to be permitted to do so as well.  The District denied the request.  In response to CEF's assertion that the District was violating the First Amendment by requiring CEF to pay a facilities fee that other groups were not required to pay, the District, through its attorney, replied that the groups that were not required to pay were "invited to participate in [the District's] education programs."  Dkt. No. 1-5 at 2.  These groups had not "*requested* permission to use Pike Schools' facilities but instead [were] *joining with* Pike Schools to provide programming consistent with Pike Schools' educational mission."  *Id.*  CEF, on the other hand, was a community group that sought to "use the facilities for their own purposes."  *Id.*  All such groups were required to comply with the provisions of the District's Policy 7510, which included the facilities fee requirement.

Policy 7510 provides, in relevant part:

The School Board believes that the school facilities of this Corporation should be
made available for community purposes, provided that such use does not infringe
on the original and necessary purpose of the property or interfere with the
educational program of the schools and is harmonious with the purposes of this
Corporation.

The Board will permit the use of school facilities when such permission has been
requested in writing by a responsible organization or a group of citizens and has
been approved by the principal and/or by the Director of Facilities.

    A.  Uses directly related to the schools and the operations of the schools;

    B. Uses by non-for-profit or for-profit organizations providing child care programs which meet the State requirements and additional conditions established by Board policies and the Superintendent's guidelines;

    C. Uses and groups indirectly related to the schools;

    D. Meetings of employee associations;

    E. Uses for voter registration and elections;

    F. Departments or agencies of the municipal government;

    G. Other governmental agencies;

    H. Community organizations or groups of individuals formed for charitable, civic, social, educational, political, religious and recreations purpose;

    I. Commercial or profit-making organizations or individuals services for profit.

*Id.* at 3. The policy further provides that "[t]he Superintendent shall develop administrative guidelines for the granting of permission to use Corporation facilities including a schedule of fees." *Id.* Those administrative guidelines set out various rules for groups using District facilities, and also provide that "[s]chool authorities reserve the right to refuse the use of the building/facilities to any group or individual" and that the district "reserves the option to waive rental fees." Dkt. No. 1-3 at 2.

Counsel for the parties exchanged email correspondence over the next several months, during which CEF took the position that it was

> asking for . . . equal treatment compared to Boy Scouts, Girl Scouts, and Girls Inc., in all respects, including . . . fees . . . . Since these organizations are afforded free use of facilities, CEF must be afforded facilities at no charge. Whether labeled "Community Partners" or otherwise, CEF simply requests the same treatment. If "partnership" is a necessary condition to receiving a waiver of facilities use fees, the CEF hereby requests that status, or the steps necessary to attain it.

Dkt. No. 1-6 at 2. The parties were unable to reach an agreement, and this litigation ensued.[1]

## II. **DISCUSSION**

To be entitled to preliminary injunctive relief, a plaintiff "'must establish that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of the equities tips in [its] favor, and that an injunction is in the public interest.'" *Higher Soc'y of Indiana v. Tippecanoe Cty., Indiana*, 858 F.3d 1113, 1116 (7th Cir. 2017) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)).

> However, this is a free speech case, and in First Amendment cases, the likelihood of success on the merits will often be the determinative factor. That is because even short deprivations of First Amendment rights constitute irreparable harm, and the balance of harms normally favors granting preliminary injunctive relief because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional. So the analysis begins and ends with the likelihood of success on the merits of the First Amendment claim.

*Id.* (citations and internal quotation marks omitted).

In order to determine whether CEF is likely to succeed on its First Amendment claim, the Court must first define what that claim is. As an initial matter, the Court notes that in its Complaint and in its briefs in support of the instant motion, CEF objects to two policies of the District: its policy regarding the use of school facilities and the fees charged for such use, which is set forth in Policy 7510, set forth above; and its Policy 9700, which relates to the display of literature by outside groups in school facilities. However, at oral argument CEF's counsel

---

[1]The District notes that over a year passed between the last correspondence between counsel and the filing of this lawsuit, and suggests that the delay demonstrates a lack of irreparable harm such that preliminary relief is not appropriate. While a lack of urgency on the part of the plaintiff can certainly be relevant in cases in which the existence of irreparable harm is questionable, the Court does not believe that to be the case in the First Amendment context, because "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Backpage.com, LLC v. Dart*, 807 F.3d 229, 239 (7th Cir. 2015).

conceded that the latter is no longer at issue. Accordingly, the motion for preliminary injunction is **DENIED** as to Policy 9700, and the Court will address the parties' arguments with regard to Policy 7510.

CEF's primary argument is summarized in its reply brief as follows:

> CEF and the Boy Scouts are similarly situated—so says the Supreme Court and every other court of the numerous ones to have examined this issue. Accordingly, the District must treat CEF and the Scouts equally in all respects—not just in threshold access to District facilities, but in the benefits provided them once they are there.

Dkt. No 27 at 4-5. This is simply untrue, and based on a vastly overbroad reading of the Supreme Court's decision in *Good News Club v. Milford Central School*, 533 U.S. 98, 111 (2001).

In *Milford*, the defendant school district had excluded CEF's Good News Club from meeting in its facilities expressly because its proposed meetings were "the equivalent of religious instruction." The school district conceded that the Boy Scouts and other groups were permitted to use the school facilities because they "promote[d] the moral and character development of children." The issue before the Supreme Court, then, was whether CEF could be excluded from using school facilities because it "promoted the moral and character development of children" through Christianity, rather than through a secular lens. CEF correctly quotes the Court in *Milford* as saying the following: "What matters for purposes of the Free Speech Clause is that we can see no logical difference in kind between the invocation of Christianity by [CEF] and the invocation of teamwork, loyalty, or patriotism by [the Scouts]." But CEF goes too far when it insists that the holding in *Milford* dictates a finding that CEF and the Boy Scouts are "constitutionally indistinguishable" and therefore must always be treated the same with regard to access to school facilities. The holding of *Milford* was simply that the exclusion of CEF in that

5

case constituted viewpoint discrimination, because the school district in that case acknowledged that the only relevant difference between CEF and the Boy Scouts and other groups that were permitted to meet at the school was CEF's religious viewpoint.

That holding, of course, does not mean that a school district could never distinguish between the Boy Scouts and CEF in some other, viewpoint neutral way. CEF's suggestion that the question before this Court was decided by *Milford* is therefore incorrect. Also incorrect is CEF's suggestion that no court that has examined the issue has so held. In fact, while it did not name the Boy Scouts by name, in *Child Evangelism Fellowship of Maryland, Inc. v. Montgomery County Public Schools*, 457 F.3d 376, 385 (4th Cir. 2006), the Fourth Circuit expressly rejected the reading of *Milford* urged by CEF:

> Nevertheless, CEF maintains that precedent requires that we hold that the policy permits viewpoint discrimination because "the Supreme Court employs an objective, direct analysis to determine whether a religious speaker has been unconstitutionally excluded. In [*Milford* and previous cases cited therein]*,* the Supreme Court simply examined whether any other group permitted access to the forum was similar to the religious group or addressed a similar topic. A match triggered access for the religious group." [CEF's] Reply Brief at 19. We are not persuaded that precedent requires such a conclusion.
>
> In [*Milford* and the other cases cited by CEF], the Supreme Court did not rely solely on an "objective" comparison of included and excluded groups in determining whether a governmental forum access policy was viewpoint neutral. The history of the forum and a comparison of the characteristics of the included and excluded groups were, of course, relevant to the Court in these cases, but they were not determinative. Rather, in each case the Court found that the challenged governmental policies violated the First Amendment's Free Speech Clause because the policies permitted viewpoint discrimination.

The Court agrees with the Fourth Circuit in this regard. *See also Child Evangelism Fellowship of Ohio, Inc. v. Cleveland Metro. Sch.*, 600 F. App'x 448, 452 (6th Cir. 2015) (similarly rejecting CEF's argument that "[w]hat matters for the constitutional inquiry . . . is not what Defendants call their 'arrangement' with the Scouts, but whether CEF has requested equal treatment, and

6

whether Defendants have refused or granted that request"). The relevant question in this case with regard to CEF's as-applied challenge is not simply whether the District has treated CEF and the Boy Scouts identically, but whether the District's decision to charge CEF a fee that it does not charge the Boy Scouts and other groups is based on CEF's viewpoint or on a constitutionally acceptable difference between the groups.

The Court need not answer that question at this juncture, however, because CEF also has made a facial challenge to the District's Policy 7510, and the Court believes it is likely to succeed on the merits on that challenge. The parties agree that the District has created a limited public forum by opening its facilities to use by community groups.

> When the State establishes a limited public forum, the State is not required to and does not allow persons to engage in every type of speech. The State may be justified in reserving its forum for certain groups or for the discussion of certain topics. The State's power to restrict speech, however, is not without limits. The restriction must not discriminate against speech on the basis of viewpoint, and the restriction must be reasonable in light of the purpose served by the forum.

*Milford*, 533 U.S. at 106-07 (internal quotations and citations omitted). In *Southworth v. Board of Regents of University of Wisconsin System*, 307 F.3d 566 (7th Cir. 2002), the Seventh Circuit found that one component of the viewpoint-neutrality requirement in this context is what it termed the "the prohibition against unbridled discretion"; in other words, "[t]he requirement of viewpoint neutrality includes a mandate that a decisionmaker not possess unbridled discretion." *Id.* at 579, 595. The court also held that a facial challenge could be made against a policy that failed to include narrowly drawn and reasonable criteria for distinguishing between various groups seeking access to a forum.

CEF has made such a challenge in this case, and it is clear that the District has given itself unbridled discretion to determine which outside groups pay fees to use its facilities and, indeed, which outside groups are permitted to use its facilities at all, given the fact that it

7

expressly reserves the right to waive its fees and refuse access to any group, but admittedly has no articulated criteria upon which to decide when to do so.[2] Reichanadter Dep., Dkt. No. 39-1 at 54, 64-65. The District also has granted itself unbridled discretion to designate certain groups as "partner" groups which are entitled to free use of its facilities. The District concedes that there are no established criteria for determining when a group may become a "partner"; in fact, the District is not able to provide a list of its own partners. *Id.* at 71.[3] This type of unbridled discretion and vague, unwritten "partner" policy violates the First Amendment. Therefore, whether the District has chosen not to waive CEF's fees based on CEF's viewpoint or for a constitutionally permissible reason, the fact remains that CEF is likely to succeed on the merits with regard to its claim that the District's policy is unconstitutional on its face.

### III. APPROPRIATE PRELIMINARY INJUNCTION

Given the record at this time, the Court finds that CEF has demonstrated a likelihood of success on the merits of its facial challenge to the District's policies with regard to community groups' use of its facilities and its fee requirement. Accordingly, CEF's motion for preliminary injunction is **GRANTED** as to that issue.

---

[2]The District's argument that the statement that "[s]chool authorities reserve the right to refuse the use of the building/facilities to any group or individual" "simply means that the District has the right to deny access to those groups who violate the rules set out in the [guidelines]," Dkt. No. 24 at 18, is untenable. Not only is it inconsistent with the plain language of the policy itself, but it also is in conflict with the District's own deposition testimony, which is cited above. In any event, the interpretation urged by the District would still be problematic, as it would imply that the District had granted itself the unbridled discretion to permit some groups who did not comply with the rules access while prohibiting others.

[3]This case is thus easily distinguished from the case cited by the District, *Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 School District*, 640 F.3d 329, 337 (8th Cir. 2011), in which the court found that "the facts of this case demonstrate that Assistant Superintendent Neal exercised far less than unbridled discretion" when arriving at a list of "preferred groups" that were granted greater access to promoting their activities to students than other groups were.

In its Complaint, CEF seeks a preliminary injunction requiring the Defendants to "permit CEF to meet in District facilities on an equal basis and terms with similarly situated non-religious groups." Dkt. No. 1 at 21. This language is too vague to satisfy the specificity requirement of Federal Rule of Civil Procedure 65(d)(1), and, in any event, is not necessarily directed at the "unbridled discretion" problem on which this ruling is based.[4] Instead, in order to protect CEF's right not to be subject to an unconstitutional policy, the Court preliminarily **ENJOINS** the District from charging CEF a fee for using the school's facilities to hold its Good News Club meetings in its elementary schools until such time as the District develops a policy with the requisite specific, narrowly drawn, and reasonable criteria for determining which groups are permitted to use its facilities without charge for which purposes.

SO ORDERED.

Date: 8/1/2017

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification

---

[4] The Court assumes the CEF is aware that its request for an injunction stating that "Defendants will not use their policies in any manner whatsoever to infringe on CEF's constitutional rights" is a non-starter. *See, e.g., E.E.O.C. v. AutoZone, Inc.*, 707 F.3d 824, 841 (7th Cir. 2013) (explaining why "[a]n injunction that does no more than order a defeated litigant to obey the law raises several concerns").